IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**DONTE PARRISH,**

        Plaintiff,

                                              **Civil action No. 1:17cv70**
v.                                            **(Judge Keeley)**

**UNITED STATES OF AMERICA,**

        Defendant.

## REPORT AND RECOMMENDATION

### I. Background

On May 3, 2017, the *pro se* Plaintiff, an inmate then-incarcerated at USP Big Sandy[1] in Inez, Kentucky, filed a Federal Tort Claim Act ("FTCA") complaint. ECF No. 1. The Clerk of Court issued a Notice of Deficient Pleading, directing Plaintiff, *inter alia*, to file his complaint on a court-approved form and to file a motion to proceed as a pauper with supporting documents. ECF No. 3. On June 16, 2017, Plaintiff corrected his deficiencies.  ECF Nos. 7, 8, 9, 10. By Order entered on June 19, 2017, Plaintiff was granted permission to proceed as a pauper but directed to pay an initial partial filing fee ("IPFF") within 28 days. ECF No. 11. On July 18, 2017, Plaintiff moved for an extension of time in which to pay the IPFF; by Order entered August 9, 2017, Plaintiff was granted the extension. ECF Nos. 13, 14. On September 8, 2017, Plaintiff moved for a second extension of time in which to pay the IPFF. ECF No. 16. He also filed a combined motion to proceed without payment of his IPFF; for a preliminary injunction/temporary restraining order; or in the alternative, for appointed counsel and/or for a copy of the Local Rules of Prisoner Litigation Procedure ("LR PL P"). ECF No. 17. By separate Orders entered September 13, 2017, the Warden was directed to respond to Plaintiff's allegations

---

[1] Plaintiff is presently incarcerated at USP Lewisburg in Lewisburg, Pennsylvania.

1

regarding the Trust Officer's failure to deduct Plaintiff's IPFF from his account [ECF No. 18]; Plaintiff's motion for appointed counsel was denied; the Clerk was directed to send him a copy of the LR PL P [ECF No. 19]; and Plaintiff's second motion for an extension of time in which to pay the IPFF was denied as moot. ECF No. 20. That same day, the undersigned issued a Report and Recommendation ("R&R") recommending that Plaintiff's motion for a preliminary injunction/temporary restraining order be denied. ECF No. 21. On September 14, 2017, Plaintiff paid his IPFF. ECF No. 22. On September 27, 2017, by special appearance of the Assistant United States Attorney ("AUSA"), the United States filed a response regarding Plaintiff's IPFF [ECF No. 25] along with a motion to seal. ECF No. 27. On October 2, 2017, Plaintiff filed objections to the R&R recommending his motion for a preliminary injunction/temporary restraining order be denied. ECF No. 28. By Order entered October 3, 2017, the United States' motion to seal was granted. ECF No. 29.

On November 21, 2017, Plaintiff moved for leave to file an amended complaint. ECF No. 34. By Order entered November 28, 2017, Plaintiff's motion to amend was granted and the Clerk was directed to send him a blank FTCA form to complete. ECF No. 35. On December 18, 2017, Plaintiff filed his amended complaint. ECF No. 39. On December 29, 2017, the United States moved to establish a time frame to answer or otherwise respond to Plaintiff's amended complaint. ECF No. 41. By Order entered January 3, 2018, the United States' motion to establish a time frame to answer or otherwise respond to Plaintiff's amended complaint was granted. ECF No. 42.

By Order entered April 4, 2018, Plaintiff was directed to clarify the record by producing copies of the exhibits referenced, but not attached to his original complaint, and neither referenced nor attached to the amended complaint, as well as copies of his administrative tort

claim(s) and the response(s) thereto. ECF No. 48. On April 16, 2018, Plaintiff filed a "memorandum of evidence" in response. ECF No. 51. By Order entered April 24, 2018, the United States was directed to produce copies of the Standard Form 95 administrative tort claims filed by Plaintiff. ECF No. 54. On April 25, 2018, the United States filed its response. ECF No. 55.

By Order entered on May 1, 2018, the United States was directed to file an answer on the limited issue of the timeliness of Plaintiff's claims. ECF No. 57. On May 17, 2018, Plaintiff filed a Notice of Timeliness. ECF No. 62. On May 30, 2018, the Plaintiff filed a Motion for Summary Judgment with an attached memorandum of law, a memorandum of evidence, and multiple attachments. ECF No. 63. On June 11, 2018, the United States filed a Motion to Dismiss for Lack of Jurisdiction, attaching a memorandum in support and two sworn declarations. ECF No. 65. The United States also filed a Motion to Hold Consideration of Plaintiff's Motion for Summary Judgment in Abeyance. ECF No. 66. Because Plaintiff was proceeding *pro se*, a Roseboro Notice was issued on June 12, 2018, advising him of his right to respond to the United States' dispositive motion. ECF No. 67. By separate Order entered the same day, the United States' Motion to Hold Consideration of Plaintiff's Motion for Summary Judgment in Abeyance was granted. ECF No. 68. By Order entered June 18, 2018, the R&R recommending that Plaintiff's motion for a preliminary injunction be denied was adopted and Plaintiff's objections were overruled. ECF No. 69. On July 5, 2018, Plaintiff filed his response in opposition to the United States' dispositive motion. ECF No. 74.

This case is before the undersigned for a Report and Recommendation on Defendant's dispositive motion.

## II. The Pleadings

A. <u>Amended Complaint</u>

Plaintiff's amended complaint[2] raises claims against Bureau of Prisons ("BOP") employees in six federal institutions situated in five jurisdictions,[3] contending that:

1) he was falsely imprisoned by Defendant's employees from December 2009 through November 2012 without probable cause "for an alleged murder they knew I did not commit." ECF No. 39 at 6.

2) Plaintiff raises an abuse of process claim, claiming that the Defendant's employees misused the Administrative Detention process and the process of Special Management Unit ("SMU") for the sole purpose of illegally confining him for three years. <u>Id.</u> at 6 – 7.

3) The Defendant's employees intentionally inflicted emotional distress upon him by keeping him confined and denying him access to family and friends; denying his visits while he was at FCI Gilmer; giving him "racially motivated puzzles" at USP Hazelton; and labeling him a racist. <u>Id.</u> at 7.

4) The Defendant's employees were negligent for failing to review Plaintiff's case and timely releasing him from Administrative Detention. <u>Id.</u> at 8.

5) Defendant's employees committed malicious prosecution, pursuing a murder charge for which they had no probable cause, causing Plaintiff to lose good conduct time ("GCT"), which was ultimately restored to Plaintiff after a successful appeal. <u>Id.</u>

Plaintiff contends that he filed an Administrative Tort Claim form regarding his claims, seeking $5,000,000.00. <u>Id.</u> at 4.

Plaintiff contends that as a result of Defendant's employees' actions, he suffered three years of illegal confinement in a 6 x 8' cell; was harassed; denied things afforded to similarly-situated inmates "out of pure spite;" and denied contact with family, which ultimately caused loss of relationships. <u>Id.</u> at 9.

---

[2] All of the claims raised in the amended complaint relate back to claims made in the original complaint. <u>See</u> Fed.R.Civ.P. 15(c).

[3] Plaintiff alleges claims against BOP employees at: 1) USP Hazelton in Bruceton Mills WV; 2) FCI Gilmer in Glenville, WV; 3) USP Lewisburg, at Lewisburg, PA; 4) FCI Oakdale, in Allen Parish, LA; 5) USP Big Sandy, in Inez, KY, and 6) the staff at the BOP's Designation & Sentence Computation Center ("DSCC") in Grand Prairie, Texas.

As relief, he seeks $5,000,000.00. Id.

**B. Motion to Dismiss for Lack of Subject Matter Jurisdiction Pursuant to Fed.R.Civ.P. 12(b)(1)**

The United States contends that the amended complaint should be dismissed because

1) this court has no subject matter jurisdiction because Federal Courts lack subject matter jurisdiction to address lawsuits like the instant one that are untimely filed pursuant to the FTCA's procedural requirements;

2) Plaintiff did not file his complaint within six months after the BOP denied his underlying administrative claims.

3) Plaintiff mailed his original complaint on May 1, 2017; because there is no prison mailbox rule in the Federal Tort Claim Act, thus, Plaintiff is not entitled to equitable tolling of the deadline(s) within which he had to file his claims.

4) The deadline for Plaintiff to file suit over Administrative Tort claim TRT-MXR-2016-06283 expired on March 14, 2017, and the deadline to file suit regarding the claims raised in Plaintiff's Administrative Tort claim TRT-MXR-2016-06710 expired on April 7, 2017. Thus, Plaintiff's claims are time-barred and must be dismissed for lack of subject matter jurisdiction.

ECF No. 65 at 2 – 9. The Defendant attached two sworn declarations to its dispositive motion.

See ECF Nos. 65-1 at 1 - 2, 65-2 at 1 - 2.

**C. Plaintiff's Response in Opposition**

Plaintiff reiterates his arguments and attempts to refute the United States' on the same. He contends that his complaint was timely filed "in accordance to [sic] the mailbox rule" and Heck v. Humphries,[4] and Houston v. Lack[5] "because it was given to the institution to forward to the courts the day I dated the complaint which was April 7, 2017 and no later." ECF No. 74 at 1 - 3. Further, he argues that the "actual accrual date" for his complaint is January 25, 2017 at 2:05 pm, the date when his murder charge was expunged by the Disciplinary Hearing Officer ("DHO"); otherwise, any filing before January 25, 2017 expungement would have been

---
[4] Heck v. Humphries, 512 U.S. 477 (1994).

[5] Houston v. Lack, 487 U.S. 266 (1988).

premature and would have rendered his filings not cognizable under 42 U.S.C. § 1983, FTCA, or Bivens.[6] Id. at 4.

### III. Standard of Review

**A. Motion to Dismiss for Lack of Subject Matter Jurisdiction Pursuant to Fed.R.Civ.P. 12(b)(1)**

A party may move to dismiss an action for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). The burden of proving subject matter jurisdiction on a Rule 12(b)(1) motion to dismiss is on the party asserting federal jurisdiction. Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). A trial court may consider evidence by affidavit, deposition, or live testimony without converting the proceeding to one for summary judgment. Id.; Mims v. Kemp, 516 F.2d 21 (4th Cir. 1975). "Unlike the procedure in a 12(b)(6) motion where there is a presumption reserving the truth finding role to the ultimate factfinder, the court in a 12(b)(1) hearing weighs the evidence to determine its jurisdiction." Adams, 697 at 1219. Further, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Materson v. Stokes, 166 F.R.D. 368, 371 (E.D. Va. 1996). Whenever it appears, by suggestion of the parties or otherwise, that the court lacks jurisdiction of the subject matter, the court shall dismiss the action. Fed. R. Civ. P. 12(h)(3).

Parrish is representing himself, which requires the Court to liberally construe his pleadings. Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251(1976); Haines v. Kerner, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)(per curiam); Loe v. Armistead, 582 F.2d 1291 (4th Cir. 1978); Gordon v. Leeke, 574 F.2d 1147 (4th Cir. 1978). While *pro se* pleadings are held to a less stringent standard than those drafted by attorneys, Haines, 404 U.S. at

---

[6] Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971).

520, even under this less stringent standard, a *pro se* complaint is still subject to dismissal. Id. at 520-21. The mandated liberal construction means only that if the Court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so. Barnett v. Hargett, 174 F.3d 1128 (10th Cir. 1999). A court may not construct the plaintiff's legal arguments for her. Small v. Endicott, 998 F.2d 411 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." Beaudett v. City of Hampton, 775 F.2d 1274 (4th Cir. 1985).

### III. Analysis

**FTCA Statute of Limitations**

It is well-established that the United States is immune from suit unless it consents to be sued. See United States v. Testan, 424 U.S. 392 (1976). However, the FTCA waives the federal government's traditional immunity from suit for claims based on the negligence of its employees. 28 U.S.C. § 1346(b)(1). Specifically, "[t]he statute permits the United States to be held liable in tort in the same respect as a private person would be liable under the law of the place where the act occurred." Medina v. United States, 259 F.3d 220, 223 (4th Cir. 2001). Nonetheless, the FCTA only waives the government's sovereign immunity if certain terms and conditions are met. Honda v. Clark, 386 U.S. 484 (1967). One of those conditions is that an FTCA action be filed within two years of the incident or within six months of the final claim denial. 28 U.S.C. § 2401(b). Title 28 U.S.C. § 2401(b) specifically states:

> A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun *within six months after the date of mailing*, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

> Moreover, 28 C.F.R. § 14.9(a) states that that

7

> **(a)** Final denial of an administrative claim shall be in writing and sent to the claimant, his attorney, or legal representative by certified or registered mail. The notification of final denial may include a statement of the reasons for the denial and **shall include a statement that, if the claimant is dissatisfied with the agency action, he may file suit in an appropriate U.S. District Court not later than 6 months after the date of mailing of the notification**.

28 CFR § 14.9(a)(emphasis added). Omission of this language from a denial letter prevents the limitations period from running. See Barrett v. United States, No. 86-0053, 1988 U.S. App. LEXIS 20301 * 3 - * 4 (4th Cir. July 5, 1988) (*per curiam*), *citing* Dyniewicz v. United States, 742 F.2 484, 486 (9th Cir. 1984); Martinez v. United States, 728 F.2d 694, 698 (5th Cir. 1984). See also Boyd v. United States, 482 F. Supp. 1126, 1129 (W.D. Pa. 1980) (Governmental failure to comply with the precise requirements of the final denial letter by making plaintiff aware of his rights will preserve a plaintiff's claim).

Here, the claims Parrish raised in his FTCA complaint were presented to the appropriate federal agency in two separate Administrative Tort claims: TRT-MXR-06283 and TRT-MXR-06710. The timeliness of each claim is analyzed separately.

Administrative Tort Claim TRT-MXR-06283 was presented to the appropriate agency on September 1, 2016, within two years from the June 3, 2016 date Parrish's appeal was granted by Regional Director J.F. Caraway, Parrish's record was expunged, a rehearing was issued and the incident report was changed from a 100 series incident report (killing) to a 100A incident report (assisting in a killing). ECF No. 65-1 at 4. It sought $15,000.00 in compensation for claims of denial of access to the courts; the opportunity to have his custody level lowered; and access to certain institutional jobs; a violation of BOP Program Statement, CFR § 542 subpart B and violation of due care provision; the loss of liberty with loss of the right to rehabilitative programs; and loss of redress to wrongs in his first DHO hearing, arising out of the June 3, 2016 expungement of a 100(A) charge of assisting in a killing. Id. Plaintiff's administrative claim was

denied on September 14, 2016. ECF No. 65-1 at 9. However, this letter was not a final denial; while it did advise Plaintiff that his claim was denied, it also advised him that he had a right to request reconsideration by submitting a request in writing and including additional evidence to support the request. Id. It did not advise Plaintiff of the six month deadline in which he was required to file suit to preserve the claim. Plaintiff did not request reconsideration of the claim. Pursuant to Fed.R.Civ.P Rule 6(a), 180 days or six months from the date of the September 14, 2016 letter was Tuesday, March 14, 2017. Parrish filed suit 50 days later, on May 3, 2017.

Nonetheless, because the government's September 14, 2016 letter did not include a statement specifically advising Parrish of the deadline in which he had to file suit, this "failure of the government to make plaintiff aware of his rights prevents this communication from being a proper final agency denial." See Boyd, 482 F. Supp. at 1129; see also Barrett, 1988 U.S. App. LEXIS 20301 * 3 - * 4. As noted *supra*, the failure to include this information prevents the limitations period from running. Id. at *4. Because there was no "proper final agency denial within 6 months of the claim as required by 28 U.S.C. § 2675, the plaintiff has the right at any time of his own option to deem such a failure to be a final agency denial." Boyd, *supra* at 1129, citing Mack v. United States Postal Service, 414 F.Supp. 504 (E.D. Mich. 1976). Accordingly, this claim is not barred by the § 2401(b) statute of limitations and this Court has subject matter jurisdiction over the claims raised therein, and the Defendant should be directed to answer the claims in Administrative Tort Claim TRT-MXR-06283 on the merits.

Administrative Tort Claim TRT-MXR-2016-06710 was presented to the appropriate agency on September 23, 2016, within two years from the June 3, 2016[7] date Parrish's appeal was granted by Regional Director J.F. Caraway, Parrish's record was expunged, a rehearing was

---

[7] Although Plaintiff actually listed December 6, 2009 as the "day and date of accident" on the Standard Form 95 for this administrative tort claim, his § 8 "Basis of Claim" makes it clear that he is relying on the June 3, 2016 date that the DHO finding was cleared and the sanctions expunged. See ECF No. 65-1 at 11.

issued and the incident report was changed from a 100 series incident report (killing) to a 100A incident report (assisting in a killing). ECF No. 65-1 at 11.  It alleged claims for 1) wrongful confinement; 2) denial of access to courts; 3) racial harassment by staff; 4) loss of eye sight; 5) loss of liberty/wrongful confinement; and 6) illegal use of restraints, and seeking $5 million in compensation. Id. Plaintiff's administrative tort claim TRT-MXR-2016-06710 was denied on October 7, 2016, and he was advised that he had six months from that date to file suit.  ECF No. 65-1 at 18. Pursuant to Fed.R.Civ.P. Rule 6(a), 180 days or six months from the date of that final denial was Thursday, April 6, 2017. However, Plaintiff did not initiate the instant action until on May 3, 2017, 27 days after that date. Thus, this second administrative tort claim is clearly time-barred.

The undersigned recognizes that the United States Supreme Court has held that the FTCA's statute of limitations is a procedural, not jurisdictional bar. United States v. Kwai Fun Wong, 135 S.Ct. 1625, 1627 (2015). Accordingly, equitable tolling is applicable to FTCA's statute of limitation. However, equitable tolling in suits against the United States is only available in exceptional circumstances. See Muth v. United States, 1 F.3d 246, 251 (4th Cir. 1993). More specifically, the Fourth Circuit has stated that equitable tolling principles are appropriate only "where the defendant has wrongfully deceived or mislead the plaintiff in order to conceal the existence of a cause of action. " Kokotis v. United States Postal Service, 223 F.3d 275, 280–81 (4th Cir. 2000) (quoting English v. Pabst Brewing Co., 828 F.2d 1047, 1049 (4th Cir. 1987)).

Plaintiff's "Notice of Timeliness" first contends that his claims accrued between the dates of June 15, 2015, when the FBI declined to prosecute the case, and June 3, 2016, when the incident report was expunged from his record.  ECF No. 62 at 1. He argues that June 3, 2016 is

the "most logical start date" because it was not until then that the FBI and the BOP were finished with their investigations. He asserts that USP Hazelton staff repeatedly told him that the matter was suspended until the FBI completed its investigation, and that he could do nothing about it until then. Id.

In his response in opposition to the defendant's dispositive motion, Plaintiff next argues that based upon Houston v. Lack, the prison mailbox rule should apply, asserting that, in Houston, the Supreme Court found that in prisoner cases, a filing is deemed "filed" at the moment that the prisoner places the document in the prison mail system. ECF No. 74 at 2. Plaintiff's response in opposition, sworn under penalty of perjury as true and correct, avers that he gave it to the prison officials to mail the same day he dated his complaint, "which was April 7, 2017 and no later."[8] Id. at 3. He contends that he put the motion in his door; the officer making rounds collected it; and that he recalls signing and dating it the day it left his cell because they were on lockdown that day. ECF No. 74-1 at 2. He avers that he was particularly mindful of the issue of timeliness and because he previously filed a § 2255 motion that was time-barred.[9] Id. He describes the usual procedure for mail collection at the prison beginning with handing of the piece of mail to an

> officer who is not certified in handling mail . . . just a regular C.O. . . . [who] inspects it and places it in his desk for a few hours . . . [until] it is normally collected anywhere from 8:00 at night until 10:00 p.m. then when the third shift comes in mail is escorted to the mailroom. It is not uncommon for mail to be misplaced, lost or late. Maybe even sent to the wrong block.

---

[8] Plaintiff's original complaint was dated April 7, 2017. See ECF No. 1 at 7, 8. However, it was postmarked May 1, 2017. [ECF No. 1-2] and not received by the court for filing until May 3, 2017. Id.

[9] A check of Plaintiff's underlying criminal docket in Case No. 1:05cr417 in the Middle District of Pennsylvania, available on PACER, corroborates that Plaintiff's § 2255 motion was dismissed as time-barred on December 21, 2011.

11

<u>Id.</u> at 3. He avers that he does not believe that the prison intentionally sent his mail out late, but believes that because they are sometimes so "overloaded with work" that they "make careless mistakes." <u>Id.</u> He contends that he wanted to make sure that his complaint was timely in case the court did not recognize the January 25, 2017 accrual date as the date the time limit began to accrue. <u>Id.</u>

Attached to the Defendant's dispositive motion is a sworn declaration from Gloria Hartzog, the Case Management Coordinator at USP Big Sandy, who states in pertinent part:

> 1) . . . I supervised mail room staff, and am familiar with mail room procedures at USP Big Sandy, including the process utilized to collect and send outgoing mail from inmates.
>
> 2) **USP Big Sandy staff collects outgoing mail from inmates on a daily basis every weekday, Monday through Friday, except for any Federal Holidays.**
>
> 3) Specifically, **outgoing mail is collected from inmates and delivered to the USP Big Sandy mail room at approximately 6:00AM each morning every weekday, Monday through Friday.**
>
> 4) If an inmate sends an outgoing piece of correspondence using regular United States Postal Service mail, that piece of outgoing correspondence is not specifically logged or otherwise tracked at USP Big Sandy.
>
> 5) A staff member from the USP Big Sandy mail room transports all outgoing mail to the United States Post Office in Inez, Kentucky at approximately 8:00AM every weekday, Monday through Friday.
>
> 6) The outgoing mail is then transported on the same day from the United States Post Office in Inez, Kentucky to a United States Post Office Hub in Charleston, West Virginia where the outgoing mail is sorted, metered, and dispatched for delivery.
>
> 7) I am aware that inmate Donte Parrish, Federal Register Number 13493-067 has filed a lawsuit in the United States District Court for the Northern District of West Virginia.
>
> 8) The envelope that Parrish used to send his lawsuit reflects that Parrish used regular United States Postal Service mail . . .

> 9) The envelope that Parrish used to send his lawsuit was postmarked at the United States Post Office Hub in Charleston, West Virginia on Monday, May 1, 2017...
>
> 10) As described above, outgoing mail is collected and delivered to the USP Big Sandy mail room on a daily basis every weekday. **Therefore, the fact that Parrish's lawsuit was postmarked on Monday, May 1, 2017 reflects that the lawsuit was collected and delivered to the USP Big Sandy mail room on Monday, May 1, 2017. At the earliest, Parrish may have prepared the document and added it to the collection of outgoing mail from inmates at USP Big Sandy after mail was collected on Friday, April 28, 2017 or over the weekend on Saturday, April 29, 2017 or Sunday, April 30, 2017**.

ECF No. 65-2 at 1 – 2 (emphasis added).

Here, the parties' competing arguments over the date Plaintiff actually submitted his original complaint to prison authorities for mailing need not be addressed. Plaintiff's mailbox rule argument overlooks the fact that in Houston, the Supreme Court was considering the appeal of a federal habeas claim, not considering the application of the mailbox rule to the FTCA. While the undersigned does not dispute the Supreme Court's findings as to the mailbox rule with regard to habeas claims and appeals, as noted *supra*, the FTCA is a comprehensive statutory scheme that must be considered apart from all other tort actions, and therefore, its waiver of immunity must be strictly construed. Accordingly, the Court's rulings in Houston are not applicable here, and for the reasons stated above, the undersigned finds that the mailbox rule does not apply to FTCA claims. Nonetheless, even if the mailbox rule were applicable here, it still would not save the claims administratively exhausted in Plaintiff's Administrative Tort Claim TRT-MXR-2016-06710; given that the 6-month deadline for the timely filing of those claims was April 6, 2017 and Plaintiff avers that he did not hand the complaint to a prison official for mailing until April 7, 2017, they would still be time-barred.

Plaintiff's response in opposition next argues that the "actual accrual date" for his complaint should be January 25, 2017, when the murder charge was finally expunged, appears to

13

be an attempt to argue for equitable tolling of the statute of limitations based on a continuing tort. A review of Plaintiff's two administrative tort claims reveals that the basis for the claims raised in each was the DHO's June 3, 2016 ruling, the date Parrish's appeal was granted by Regional Director J.F. Caraway, when his record was expunged, but a rehearing was issued, and the incident report was changed from a 100 series incident report (killing) to a 100A incident report (assisting in a killing). Therefore, it appears that Plaintiff is attempting to argue that the statute of limitations should be tolled for 110 days to make his complaint timely. The plaintiff's claim is untenable, however, in light of the exact wording of the statute, and the strict construction the Court must give to the statute. Title 28 U.S.C. § 2401(b) specifically states:

> A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun *within six months after the date of mailing*, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

Because the FTCA waives the United States traditional grant of sovereign immunity, the statute must be strictly construed. United States v. Kubrick, 444 U.S. 111, 117-18 (1979). Put simply, because the United States may not be sued without its permission, the Court may not take it upon itself "to extend the waiver beyond that which Congress intended." Id. Therefore, "[i]f an action is not filed as the statute requires, the six-month time period may not be extended" by the Court. Tuttle v. United States Postal Service, 585 F.Supp. 55, (M.D. Pa. 1983) (citing Kubrick at 117-18.)).

The statute specifically states that the claim must be filed within six months after the date of mailing. The plaintiff's contention that January 25, 2017 should be the "accrual date" for his claim, thus tolling the statute of limitations for 110 days, would extend the six-month period beyond what Congress intended and cannot stand. Equitable tolling in suits against the United

States is only available in exceptional circumstances. See Muth v. United States, 1 F.3d 246, 251 (4th Cir. 1993). Equitable tolling is only available when a claimant has exercised due diligence in preserving his legal rights, id., or can show that the defendant "attempted to mislead him and that the plaintiff reasonably relied on the misrepresentation by neglecting to file a timely charge." See English v. Pabst Brewing Co., 828 F.2d 1047, 1049 (4th Cir. 1987). Here, despite being advised that he had six months in which to file suit over the claims in his Administrative Tort Claim TRT-MXR-2016-06710, inexplicably, Plaintiff waited until the time had elapsed before filing suit. Thus, the plaintiff's lack of diligence does not comport with a finding of equitable tolling. Moreover, the agency's denial letter clearly and correctly informed the plaintiff that he had six months from the date of denial of Administrative Tort Claim TRT-MXR-2016-06710 in which to file suit in federal court; it did not mislead Plaintiff or make any misrepresentations.  Therefore, Plaintiff's FTCA claims first raised in Administrative Tort Claim TRT-MXR-2016-06710 should be dismissed as time-barred.

## IV. Recommendation

Accordingly, for the foregoing reasons, the undersigned **RECOMMENDS** that the Defendant's Motion to Dismiss for lack of subject matter jurisdiction [ECF No. 65], be **GRANTED in part** as to Administrative Tort Claim TRT-MXR-2016-06710, because those claims are barred by the statute of limitations; that Defendant's motion be **DENIED in part** as to Administrative Tort Claim TRT-MXR-06283; and that the Defendant be **DIRECTED** to address the remainder of Plaintiff's as stated in   Administrative Tort Claim TRT-MXR-06283 on the merits.

Within **fourteen (14) days** after being served with a copy of this Report and Recommendation, any party may file with the Clerk of Court written objections identifying those

portions of the recommendation to which objections are made. Objections shall identify each portion of the magistrate judge's recommended disposition that is being challenged and shall specify the basis for each objection.  Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitation, consistent with LR PL P 12. A copy of any objections should also be submitted to the United States District Judge.  **Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation.**   28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

 The Clerk is directed to send a copy of this Report and Recommendation to the *pro se* Plaintiff by certified mail, return receipt requested, to his last known address as shown on the docket, and to transmit a copy electronically to all counsel of record.

Upon entry of this Report and Recommendation, the clerk of court is **DIRECTED** to terminate the Magistrate Judge association with this case until further Order of the District Judge.

DATED: September 24, 2018

/s/ *Michael John Aloi*
MICHAEL JOHN ALOI
UNITED STATES MAGISTRATE JUDGE