**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**DONTE PARRISH,**

    P**laintiff,**

                                                  **Civil Action No. 1:17cv70**
**v.**                                            **(Judge Keeley)**

**UNITED STATES OF AMERICA,**

        **Defendant.**

## REPORT AND RECOMMENDATION

### I. Background

On May 3, 2017, the *pro se* Plaintiff, an inmate then-incarcerated at USP Big Sandy[1] in

Inez, Kentucky, filed a Federal Tort Claim Act ("FTCA") complaint. ECF No. 1. The Clerk of

Court issued a Notice of Deficient Pleading, directing Plaintiff, *inter alia*, to file his complaint on

a court-approved form and to file a motion to proceed as a pauper with supporting documents.

ECF No. 3. On June 16, 2017, Plaintiff corrected his deficiencies.  ECF Nos. 7, 8, 9, 10. By Order

entered on June 19, 2017, Plaintiff was granted permission to proceed as a pauper but directed to

pay an initial partial filing fee ("IPFF") within 28 days. ECF No. 11. On July 18, 2017, Plaintiff

moved for an extension of time in which to pay the IPFF; by Order entered August 9, 2017,

Plaintiff was granted the extension. ECF Nos. 13, 14. On September 8, 2017, Plaintiff moved for

another extension of time in which to pay the IPFF. ECF No. 16. He also filed a combined motion

to proceed without payment of his IPFF; for a preliminary injunction/temporary restraining order;

or in the alternative, for appointed counsel and/or for a copy of the Local Rules of Prisoner

Litigation Procedure ("LR PL P"). ECF No. 17. By separate Orders entered September 13, 2017,

---

[1] Plaintiff is presently incarcerated at USP Thompson in Thompson, Illinois. See ECF No. 97.

the Warden was directed to respond to Plaintiff's allegations regarding the Trust Officer's failure to deduct Plaintiff's IPFF from his account [ECF No. 18]; Plaintiff's motion for appointed counsel was denied; the Clerk was directed to send him a copy of the LR PL P [ECF No. 19]; and Plaintiff's second motion for an extension of time in which to pay the IPFF was denied as moot. ECF No. 20. That same day, the undersigned issued a Report and Recommendation ("R&R") recommending that Plaintiff's motion for a preliminary injunction/temporary restraining order be denied. ECF No. 21.  On September 14, 2017, Plaintiff paid his IPFF. ECF No. 22. On September 27, 2017, by special appearance of the Assistant United States Attorney ("AUSA"), the United States filed a response regarding Plaintiff's IPFF [ECF No. 25] along with a motion to seal. ECF No. 27.  On October 2, 2017, Plaintiff filed objections to the R&R recommending his motion for a preliminary injunction/temporary restraining order be denied. ECF No. 28. By Order entered October 3, 2017, the United States' motion to seal was granted. ECF No. 29.

On November 21, 2017, Plaintiff moved for leave to file an amended complaint.  ECF No. 34.  By Order entered November 28, 2017, Plaintiff's motion to amend was granted and the Clerk was directed to send him a blank FTCA form to complete. ECF No. 35. On December 18, 2017, Plaintiff filed his amended complaint.  ECF No. 39. On December 29, 2017, the United States moved to establish a time frame to answer or otherwise respond to Plaintiff's amended complaint. ECF No. 41. By Order entered January 3, 2018, the United States' motion to establish a time frame to answer or otherwise respond to Plaintiff's amended complaint was granted. ECF No. 42.

By Order entered April 4, 2018, Plaintiff was directed to clarify the record by producing copies of the exhibits referenced, but not attached to his original complaint, and neither referenced nor attached to the amended complaint, as well as copies of his administrative tort claim(s) and the response(s) thereto.  ECF No. 48.  On April 16, 2018, Plaintiff filed a "memorandum of

evidence" in response. ECF No. 51. By Order entered April 24, 2018, the United States was directed to produce copies of the Standard Form 95 administrative tort claims filed by Plaintiff. ECF No. 54.  On April 25, 2018, the United States filed its response.  ECF No. 55.

By Order entered on May 1, 2018, the United States was directed to file an answer on the limited issue of the timeliness of Plaintiff's claims. ECF No. 57. On May 17, 2018, Plaintiff filed a Notice of Timeliness.  ECF No. 62.  On May 30, 2018, the Plaintiff filed a Motion for Summary Judgment with an attached memorandum of law, a memorandum of evidence, and multiple attachments. ECF No. 63.   On June 11, 2018, the United States filed a Motion to Dismiss for Lack of Jurisdiction, attaching a memorandum in support and two sworn declarations. ECF No. 65. The United States also filed a Motion to Hold Consideration of Plaintiff's Motion for Summary Judgment in Abeyance.  ECF No. 66.  Because Plaintiff was proceeding *pro se*, a <u>Roseboro</u> Notice was issued on June 12, 2018, advising him of his right to respond to the United States' dispositive motion. ECF No. 67. By separate Order entered the same day, the United States' Motion to Hold Consideration of Plaintiff's Motion for Summary Judgment in Abeyance was granted. ECF No. 68. By Order entered June 18, 2018, the R&R recommending that Plaintiff's motion for a preliminary injunction be denied was adopted and Plaintiff's objections were overruled. ECF No. 69. On July 5, 2018, Plaintiff filed his response in opposition to the United States' dispositive motion. ECF No. 74.

On September 24, 2018, the undersigned entered an R&R, recommending that the Court grant in part and deny in part the Defendant's motion to dismiss. ECF No. 77. More specifically, the undersigned recommended that the Court deny the motion to dismiss Parrish's claims as stated in Administrative Tort Claim TRT-MXR-06283 based on the Defendant's failure to specifically advise Parrish of the six-month deadline within which he was required to file suit in order to

preserve his claims, because the failure to include this information in a claim denial letter prevented the limitations period from running. ECF No. 77. The R&R then recommended that the Court grant the defendant's motion dismiss Parrish's claims as stated in Administrative Tort Claim TRT-MXR-2016-06710, because those claims were time-barred based on Parrish's failure to file this action within six (6) months of the defendant's final denial of the claims, after receiving adequate notice of the filing deadline. It further concluded that neither the "prison mailbox rule" nor the doctrine of equitable tolling apply to save those claims. Id. Plaintiff timely objected [ECF No. 81]; the Defendant did not file any objections.

On January 16, 2019, the Court entered an order adopting the R&R, overruling Plaintiff's objections, granting in part the Defendant's motion to dismiss, dismissing as time-barred Plaintiff's claims as stated in Administrative Tort Claim TRT-MXR-2016-067; denying in part the Defendant's motion to dismiss, directing the Defendant to address Plaintiff's remaining claims as stated in Administrative Tort Claim TRT-MXR-06283 on the merits, and recommitting this case to the undersigned. ECF No. 85. On January 17, 2019, the United States moved to temporarily stay the case in light of the continuing lapse in federal government funding. ECF No. 86. By Order entered January 23, 2019, the motion was granted. ECF No. 88. That same day, Plaintiff filed a Motion for Relief from Last Judgment under Rule 60(b)(6) and a Motion for Leave to Amend under Fed.R.Civ.P. 15(a)(2), (c)(1)(A) and (C)(B). ECF Nos. 89, 90.

On January 29, 2019, the United States moved to lift the stay and establish a time frame for its response. ECF No. 92. By Order entered February 1, 2019, the temporary stay was lifted and the remainder of the motion was referred to the undersigned. ECF No. 93.

By Order entered June 18, 2019, the Motion for Relief from Last Judgment under Rule 60(b)(6) was denied. ECF No. 98. The undersigned issued an R&R the same day, recommending

that the Motion to Amend be denied as futile.  ECF No. 99.  An Order was also entered, granting the remainder of the United States' January 29, 2019 motion, and setting a date for the United States to respond to Plaintiff's remaining allegations. ECF No. 100.

On July 2, 2019, the United States filed a Motion to Dismiss, or Alternatively, for Summary Judgment with a memorandum in support, attaching affidavits and exhibits.  ECF Nos. 102, 103. Because Plaintiff is *pro se*, on July 2, 2019, another Roseboro Notice was issued.  ECF No. 104. On July 10, 2019, Plaintiff filed objections to the R&R recommending that his Motion to Amend be denied as futile. ECF No. 107. That same day, Plaintiff filed a letter motion to the undersigned, contending that the Roseboro Notice arrived but that he had never received a copy of the Defendant's dispositive motion and asking that the same be re-sent to him via certified mail. ECF No. 108. That same day, the United States filed a Supplemental Certificate of Service, indicating that a second copy of the dispositive motion had already been sent that day via certified mail. ECF No. 109.  By Order entered July 15, 2019, Plaintiff's letter motion seeking an order directing the Defendant to re-send him a copy of its dispositive motion via certified mail was denied as moot; the Defendant was directed to file a copy of the certified mail return receipt when it was received; and the time for Plaintiff to file his response was reset. ECF No. 110.  Defendant filed a copy of the proof of delivery of the second copy of its dispositive motion on July 23, 2019, showing that Plaintiff received it on July 17, 2019. ECF No. 112. On July 29, 2019, Plaintiff wrote a letter to the undersigned. ECF No. 116. Plaintiff filed his response in opposition on August 5, 2019. ECF No. 117. On August 12, 2019, Plaintiff filed a sworn declaration from another prisoner. ECF No. 118.

Accordingly, this case is again before the undersigned for R&R pursuant to Local Rule of Prisoner Litigation Procedure ("LR PL P") 2.

## II. The Pleadings

A. **Amended Complaint**

Plaintiff's amended complaint[2] potentially raises claims against Bureau of Prisons ("BOP")

employees in six federal institutions situated in five jurisdictions,[3] contending that:

1) he was falsely imprisoned by Defendant's employees from December 2009 through November 2012 without probable cause "for an alleged murder they knew I did not commit." ECF No. 39 at 6.

2) Plaintiff raises an abuse of process claim, claiming that the Defendant's employees misused the Administrative Detention process and the process of Special Management Unit ("SMU") for the sole purpose of illegally confining him for three years. Id. at 6 – 7.

3) The Defendant's employees intentionally inflicted emotional distress upon him by keeping him confined and denying him access to visits with family and friends while he was at FCI Gilmer; giving him "racially motivated puzzles" while he was at USP Hazelton; and labeling him a racist. Id. at 7.

4) The Defendant's employees were negligent for failing to review Plaintiff's case and timely releasing him from Administrative Detention. Id. at 8.

5) Defendant's employees committed malicious prosecution, pursuing a murder charge for which they had no probable cause, causing Plaintiff to lose Good Conduct Time ("GCT"), which was ultimately restored to Plaintiff after a successful appeal. Id.

Plaintiff contends that he filed an Administrative Tort Claim form regarding his claims,

seeking $5,000,000.00. Id. at 4.

Plaintiff contends that as a result of Defendant's employees' actions, he suffered three

years of illegal confinement in a 6' x 8' cell; was harassed; denied things afforded to similarly-

situated inmates "out of pure spite;" and was denied contact with family, which ultimately caused

loss of relationships.  Id. at 9.  As relief, he seeks $5,000,000.00 in damages. Id.

---

[2] All of the claims raised in the amended complaint relate back to claims made in the original complaint. See Fed.R.Civ.P. 15(c).

[3] Plaintiff's allegations address potential claims against  BOP  employees at: 1) USP Hazelton  in  Bruceton Mills WV; 2) FCI Gilmer in Glenville, WV; 3) USP Lewisburg, at Lewisburg, PA; 4) FCI Oakdale, in Allen Parish, LA; 5) USP Big Sandy, in Inez, KY, and 6) the staff at the BOP's Designation & Sentence Computation Center ("DSCC") in  Grand Prairie, Texas.

**B. <u>Motion to Dismiss or Alternatively, for Summary Judgment</u>**

The United States contends that the amended complaint should be dismissed or summary judgment granted in their favor because:

1) the United States is generally immune from suit, and any waiver of immunity is strictly construed in favor of the government [ECF No. 103 at 7];

2) federal courts lack subject matter jurisdiction to address suits against the federal government unless the plaintiff demonstrates his claim is authorized by a waiver of sovereign immunity [<u>id.</u> at 8];

3) all of Plaintiff's tort claim TRT-MXR-2016-06283 assertions arise from the fact that the BOP remanded Incident Report 1959677 for a new disciplinary hearing on the charge of "assisting in a killing," rather than the original charge of "killing." After a new hearing, the BOP expunged Incident Report 1959677 from Plaintiff's disciplinary record; therefore, mooting all of the allegations in tort claim TRT-MXR-2016-06283.   <u>Id.</u> at 10.

4) Even if Plaintiff's amended complaint allegations regarding the BOP abusing the administrative process by remanding an incident report on an altered charge are not moot, the claims in his amended complaint are not cognizable, because they are not asserting the same abuse of process claim he articulated in tort claim TRT-MXR-2016-06283. Instead, his amended complaint alleges various other claims that were not presented in TRT-MXR-2016-06283. <u>Id.</u> at 11 - 13.

5) Even if Plaintiff's allegations are cognizable, he fails to state a viable legal claim in either his administrative tort claim or his amended complaint, because as long as an inmate has accurate notice of the allegations against him, BOP disciplinary staff can alter the specific classification of the disciplinary charge. <u>Id.</u> at 13.

6) Plaintiff cannot support a claim for intentional infliction of emotional distress ("IIED"). <u>Id.</u> at 14.

7) Plaintiff cannot establish a negligence claim. <u>Id.</u> at 15.

8) Plaintiff's allegations regarding being placed in the SHU or SMU overlook the fact that the BOP has broad discretion to transfer and assign inmates. <u>Id.</u> at 17.

9) Plaintiff cannot request monetary damages in this FTCA suit in excess of the amount that he requested in the applicable underlying administrative tort claim. In TRT-MXR-2016-06283 tort claim, Plaintiff made a demand for $15,000.00; in his amended complaint, he requests $5,000,000.00, but fails to explain how he is entitled to the same. <u>Id.</u> at 18 – 21.

In addition to a number of exhibits, the Defendant attaches three sworn declarations to its dispositive motion. See ECF Nos. 103-1, 103-2, 103-3.

## C. Plaintiff's Response in Opposition

Plaintiff reiterates his version of the facts and arguments and attempts to refute the United States' on the same.  He argues that under 28 CFR 542 subpart B(i) [sic], Appeals, the BOP had no authority to change his original charge of killing to a lesser offense. ECF No. 117-1 at 3. He admits that the charge on the lesser offense, assisting in a killing (Code 100(A)) was also ultimately expunged from his disciplinary record. Id. at 4. He argues that because he is now incarcerated at the Administrative United States Penitentiary in Thompson, Illinois ("AUSP"), in an SMU, it is the "third time being sent to the SMU by the BOP for 'having a history of killing inmates,'" when he has never had a charge for killing an inmate. Id.

Plaintiff further contends that the BOP has produced "a false document," and urges the Court to "void" the Defendant's dispositive motion for its reliance on these altered and falsified documents. Id. at 5 – 6. Finally, he argues that he is entitled to the greater sum of monetary damages than initially alleged in his administrative tort claim, because circumstances changed that were not discoverable at the time he presented his claim to the federal agency. Id. at 24 – 25.

## III. Standard of Review

### A. Motion to Dismiss - Subject Matter Jurisdiction - Fed.R.Civ.P. 12(b)(1)

A party may move to dismiss an action for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). The burden of proving subject matter jurisdiction on a Rule 12(b)(1) motion to dismiss is on the party asserting federal jurisdiction. Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982).  A trial court may consider evidence by affidavit, deposition, or live testimony without converting the proceeding to one for summary judgment. Id.; Mims v. Kemp,

516 F.2d 21 (4th Cir. 1975). "Unlike the procedure in a 12(b)(6) motion where there is a presumption reserving the truth finding role to the ultimate factfinder, the court in a 12(b)(1) hearing weighs the evidence to determine its jurisdiction." <u>Adams</u>, 697 at 1219. Further, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. <u>Materson v. Stokes</u>, 166 F.R.D. 368, 371 (E.D. Va. 1996). Whenever it appears, by suggestion of the parties or otherwise, that the court lacks jurisdiction of the subject matter, the court shall dismiss the action. Fed. R. Civ. P. 12(h)(3).

### B. <u>Motion to Dismiss – Failure to State a Claim - Fed.R.Civ.P. 12(b)(6)</u>

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a case when a complaint fails to state a claim upon which relief can be granted. The Federal Rules of Civil Procedure require only "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47, 78 S.Ct. 99 (1957)). Courts long have cited "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." <u>Conley</u>, 355 U.S. at 45-46.

Plaintiff is proceeding *pro se* and therefore the Court must liberally construe his pleadings. <u>Estelle v. Gamble</u>, 429 U.S. 97, 106, 97 S.Ct. 285 (1976); <u>Haines v. Kerner</u>, 404 U.S. 519, 520 - 1, 92 S.Ct. 594, 596 (1972) (*per curiam*); <u>Erickson v. Pardus</u>, 551 U.S. 89, 94, 127 S.Ct. 2197 (2007). While *pro se* pleadings are held to a less stringent standard than those drafted by attorneys, even under this less stringent standard, a *pro se* complaint is still subject to dismissal. <u>Haines</u>,

*supra*, at 520–21. "[T]he mandated liberal construction afforded to *pro se* pleadings 'means that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so.'" Barnett v. Hargett, 174 F.3d 1128, 1133 (10th Cir. 1999). However, "judges are [ ] not required to construct a party's legal arguments for him." Small v. Endicott, 998 F.2d 411, 417 - 18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." Beaudett v. City of Hampton, 775 F.2d 1274 (4th Cir. 1985).

Although a complaint need not contain detailed factual allegations, a plaintiff's obligation in pleading "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do...." Bell Atlantic Corp. v. Twombly, 550 U.S.  544, 555 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007). Accordingly, "[f]actual allegations must be enough to raise a right to relief above the speculative level," to one that is "plausible on its face." Id. at 555, 570. In Twombly, the Supreme Court found that "because the plaintiffs [] have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. at 570. Thus, to survive a motion to dismiss, a plaintiff must state a plausible claim in his complaint which is based on cognizable legal authority and includes more than conclusory or speculative factual allegations.

 "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." Ashcroft v. Iqbal, 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," because courts are not bound to accept as true a legal conclusion couched as a factual allegation.  Id. at 678.  "[D]etermining whether a complaint states a plausible claim . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id. at 679. Thus, a well-pleaded complaint must offer more than "a sheer

possibility that a defendant has acted unlawfully," in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id. at 678.

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of North Carolina v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d1130, 1134 (4th Cir. 1993); see also Martin, 980 F.2d at 952.

"Ordinarily, a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment." Alternative Energy. Inc. v. St. Paul Fire and Marine Ins. Co., 267 F.3d 30, 33 (1st Cir.2001) (cited with approval in Witthohn v. Federal Ins. Co., 164 Fed. Appx. 395 (4th Cir. 2006) (unpublished)).  There are, however, exceptions to the rule that a court may not consider any documents outside of the complaint. "Courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."  Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322, 127 S.Ct. 2499, 2509 (2007).

When, as here, a motion to dismiss pursuant to Rule 12(b)(6) is accompanied by affidavits, exhibits and other documents to be considered by the Court, the motion will be construed as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

**C. Motion for Summary Judgment – Fed.R.Civ.P. 56**

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex, 447 U.S. at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Electric Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. Id. This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256.

The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Id. at 248. To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence

12

must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita, 475 U.S. at 587 (citation omitted).

## IV. **Applicable Law**

The United States enjoys sovereign immunity except to the extent that Congress has waived it by enacting the Federal Tort Claims Act, 28 U.S.C. §§2671, *et seq.* The FTCA provides at § 2674 as follows:

> The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

28 U.S.C. §1346(b)(1) and (2) provide as follows:

> (b)(1) [T]he district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

> (2) No person convicted of a felony who is incarcerated while awaiting sentencing or while serving a sentence may bring a civil action against the United States or any agency, officer, or employee of the Government for mental or emotional injury suffered while in custody without a prior showing of a physical injury.

Generally speaking, therefore, the FTCA confers subject matter jurisdiction to the District Courts over negligence actions against the United States. In order to maintain a case against the United States under the FTCA, the plaintiff must demonstrate that his action is permissible under the FTCA and satisfies the necessary elements of a tort claim cognizable under law of the state in which the action accrued. Therefore, under West Virginia law, which

applies under the FTCA, the plaintiff in a negligence action bears the burden of proof by a preponderance of the evidence to demonstrate the applicable standard of care, deviation from that standard and a causal connection between the deviation and plaintiff's injury. See Judy v. Grant County Health Dep't., 210 W.Va. 286, 291 - 92, 557 S.E.2d 340, 345 - 46 (2001).

Due to its sovereign immunity, "[n]o action lies against the United States unless the legislature has authorized it." Wood v. United States, 845 F.3d 123, 127 (4th Cir. 2017) (quoting Dalehite v. United States, 346 U.S. 15, 30 (1953)). Under the FTCA, Congress authorized such claims "against the United States based on the negligence or wrongful acts or omissions of its employees committed within the scope of employment." Id. (citing 28 U.S.C. §§ 1346(b)(1), 2671-2680).

Congress limited the scope of this waiver, however, "to a certain category of claims." Kerns v. United States, 585 F.3d 187, 194 (4th Cir. 2009) (quoting FDIC v. Meyer, 510 U.S. 471, 475 (1994). Pursuant to 28 U.S.C. § 1346(b), claims under the FTCA must be made

> [1] against the United States, [2] for money damages, . . . [3] for injury or loss of property, or personal injury or death [4] caused by the negligent or wrongful act or omission of any employee of the Government [5] while acting within the scope of his office or employment, [6] under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

Id. (quoting Meyer, 510 U.S. at 475) (alteration in original) (reasoning that whether the defendant was acting in the scope of his employment is a jurisdictional issue). District courts only have jurisdiction to hear those cases that fall within the definition of § 1346. Meyer, 510 U.S. at 477. For instance, because the FTCA directs the application of state law - "the law of the place where the act or omission occurred" - constitutional torts are not cognizable under the statute. Id.

## V. Analysis

The claims in this case arise out of an incident that occurred during the evening of December 6, 2009, in the C-2 Unit at USP Hazelton, when Plaintiff and several other inmates attacked another inmate ("Wilson"), ultimately killing him. See Incident Report 1959677, ECF No. 51-1.  Plaintiff was seen on VICON camera footage repeatedly striking Wilson on the back and upper torso with a broom handle. Id. Wilson ultimately died as a result of multiple puncture wounds to the left, right, and lower parts of the chest, and three puncture wounds to the mid back; one of the puncture wounds from the back went through his lung and penetrated his heart. Id.

On December 27, 2009, after the VICON footage was finally reviewed, Plaintiff, whose assigned housing unit was B-1, was charged in Incident Report 1959677 with Killing/Being in Unauthorized Area, violations of Codes 100 and 316. Id.  Because of the serious nature of the charges, the matter was referred to the FBI and United States Attorney's Office ("USAO") for investigation and potential criminal prosecution. See Declaration of Curtis Hise, Regional Discipline Hearing Administrator ("DHA"), Mid-Atlantic Regional Office of the BOP ("Hise Decl."), ECF No. 103-2, ¶ 3 at 3.  Pursuant to federal regulation and BOP policy, the BOP suspends internal BOP disciplinary investigations and processes when allegations of inmate misconduct are referred to authorities for review for possible criminal prosecution. See 28 C.F.R. §§ 541.5(b)(2) and 541.7(c).

Plaintiff was transferred from USP Hazelton to FCI Gilmer in mid-January 2010. See Declaration of Howard Williams, Legal Assistant and Administrative Remedy Clerk, Mid-Atlantic Regional Office of the Federal Bureau of Prisons ("Williams Decl."), ECF No. 103-1, ¶5 at 2; see also Inmate History for Donte Parrish, ECF No. 103-1 at 12.

While the charges were being investigated by federal authorities, on October 28, 2010, Plaintiff was given notice of a hearing referral for designation to a Special Management Unit ("SMU"). See ECF No. 103-3 at 5. On November 1, 2010, the hearing was held; the Hearing

Administrator ("HA") found that Plaintiff had a history of violent disruptive behavior that negatively impacted inmates and staff; was a High Security Level inmate with a Maximum Custody assignment; and had a history of disciplinary sanctions for "Code 104(3X) Possession of a weapon, Code 20l (1X), Fighting with another person, Code 222 (2X), Making Possessing or using Intoxicants, Code 307(1X), Refusing an order, Code 312 (1X), Insolence towards staff, and Code 305(1), Possessing contraband." Id. at 7. Accordingly, the HA found that Plaintiff's continued presence in the traditional USP setting was a threat to both the inmate general population and staff, and recommended that he be reassigned to a SMU program at the FCC in Oakdale, Louisiana, where he could be more closely monitored. Declaration of Scott Wilson, Correctional Programs Specialist, Mid-Atlantic Regional Office of the BOP ("Wilson Decl."), ECF No. 103-3, ¶ 6 at 3.

Accordingly, in mid-January of 2011, Plaintiff was transferred from FCI Gilmer to the SMU at USP Lewisburg; he remained there until he was transferred to the SMU in Oakdale, Louisiana in November, 2011. See Inmate History, ECF No. 103-1 at 12.

Almost five and a half years after Incident Report 1959677 was issued, on June 15, 2015, after declining to prosecute, the FBI and USAO released the Incident Report back to the BOP to process. See Hise Decl., ¶ 4 at 3.

On August 14, 2015, after conducting a hearing on Incident Report No. 1959677, the DHO found that Plaintiff had committed the prohibited acts of Killing and Being in an Unauthorized Area.  See DHO Report, ECF No. 51-7 at 3. For the charge of Killing, Plaintiff was sanctioned with the loss of 41 days of Good Time Credit ("GTC") and 1 day in disciplinary segregation, and for the charge of Being in an Unauthorized Area, he lost 30 days visiting privileges. Id.

16

On March 13, 2016, Plaintiff filed a Regional Administrative Remedy Appeal, challenging the DHO's August 14, 2015 decision on Incident Report 1959677, and requesting that the Incident Report be expunged, his GTC be restored, and his "Max Custody" status be removed. ECF No. 51-8 at 1.

On April 13, 2016, Plaintiff's Regional Administrative Remedy Appeal was received by the BOP's Regional Counsel of April 13, 2016. Id.  On June 3, 2016, J.F. Caraway, the BOP's Regional Mid-Atlantic Director, issued a response, partially granting Plaintiff's appeal of the DHO's August 14, 2015 decision on Assisting in Killing (Code 100A) to the extent that Plaintiff's Incident Report was remanded for rehearing. See ECF No. 103-1 at 35.

However, subsequently, upon administrative review, it was determined that a procedural error had occurred, and Incident Report No. 1959677 was remanded to the institution for a rehearing; that rehearing was held on January 25, 2017.  Hise Decl., ECF No. 103-2, ¶7 at 3. Upon conclusion of rehearing, the DHO found there was insufficient evidence to make a finding and expunged the Incident Report from Plaintiff's record.[4]

On August 11, 2016, Plaintiff filed Administrative Tort Claim TRT-MXR-2016-06283, alleging "ABUSE OF PROCESS (emphasis in original)," asserting that he had successfully appealed the DHO's August 14, 2015 decision, finding him guilty of "a 100 series shot;" that on June 3, 2016, the record was expunged; but rehearing was issued, now for the charge of (100A), assisting in a killing, and that this was an "abuse of process" or "direct misuse of legal process," because he had never been charged with assisting in a killing in the initial incident report. ECF No. 55-1 at 3. Parrish alleged that "I am now being charge [sic] for a charge I was never charged

---

[4] Hise further averred that once an incident report has been expunged in the BOP SENTRY computerized Chronological Disciplinary Record, it is removed from the general database, so there is no longer any record of Incident Report 1959677 in the general discipline database, and therefore, even as the DHA, he has limited access to retrieve any information on the expunged report. See Hise Decl., ECF No. 103-2, ¶ 8 at 3.

with in the initial incident report. This is a direct misuse of a legal process." Id. Parrish alleged that as a result of the "abuse of process," he had been denied access to the courts to be further cleared of the murder charge (of inmate Wilson); denied the opportunity to have his custody level lowered; denied access to certain institutional jobs; had lost liberty and the right to rehabilitative programs; and lost redress to wrongs from the first hearing. Id. Further, he alleged violations of an unspecified BOP Program Statement, "CFR 542 subpart B," and "Due Care provision." Id.

On September 14, 2016, the BOP's Regional Counsel, Matthew W. Mellady denied Plaintiff's Administrative Tort Claim TRT-MXR-2016-06283, noting that Plaintiff's intentional infliction of emotional distress claim [sic] failed because Plaintiff had not demonstrated that he had suffered any specific physical injury or explained how the BOP was responsible for the injury.  ECF No. 103-1 at 42.

Here, as noted in the first R&R, the claims Parrish raised in his amended FTCA complaint were originally presented to the appropriate federal agency in two separate Administrative Tort claims:  TRT-MXR-06283 and TRT-MXR-06710. This Court has already established the untimeliness of TRT-MXR-2016-06710 and dismissed the claims raised therein. See ECF No. 85 at 15. Therefore, notwithstanding Plaintiff's attempt to include claims from both administrative torts in his amended complaint, the claims raised in TRT-MXR-06283 are the only ones remaining for which this Court has subject matter jurisdiction.  Despite the fact that it is undisputed that the Incident Report was expunged from Plaintiff's disciplinary record and Plaintiff's GCT was restored, and notwithstanding the Defendant's claim that the Plaintiff's claims are mooted by that expungement, Plaintiff's claims in the amended complaint will be given review.

A. **False imprisonment**

Plaintiff's amended complaint contends that he was falsely imprisoned by the Defendant's employees from December 2009 through November 2012 without probable cause (in the

SHU/SMU, while the Incident Report was being investigated) "for an alleged murder they knew I did not commit."  ECF No. 39 at 6.

As previously noted, in an FTCA action, liability stems from the substantive law of the state in which the alleged misconduct occurred. Medina v. United States, 259 F.3d 220, 223 (4th Cir. 2001). Here, the substantive law of West Virginia applies because Plaintiff asserts that the alleged misconduct occurred as a result of the Incident Report issued at USP Hazelton for his involvement in inmate Wilson's death.

The elements of false imprisonment are (1) the detention of the person, and (2) the unlawfulness of the detention and restraint. Riffe v. Armstrong, 197 W. Va. 626, 643, 477 S.E.2d 535, 552, (W.Va. 1996) citing Williamson v. Glen Alum Coal Co., 72 W. Va. 288, 290, 78 S.E. 94, 95 (W.Va. 1913).

Here, however, the undersigned agrees with the Defendant [ECF No. No. 103 at 12 – 13] that while Plaintiff's tort claim TRT-MXR-2016-06283 did allege that as a result of the "abuse of process," he experienced a "loss of liberty" during the investigation of the Incident Report, [ECF No. 55-1 at 3]," this not the *same* claim that Plaintiff raises here in his amended complaint, i.e., a claim of false imprisonment.

A plaintiff must file an FTCA lawsuit in "careful compliance" with certain jurisdictional prerequisites. Kokotis v. U.S. Postal Serv., 223 F.3d 275, 278 (4th Cir. 2000) (citations omitted). A prospective plaintiff cannot file a tort lawsuit against the United States without first timely and properly presenting his claim to the appropriate federal agency. 28 U.S.C. § 2401(b); 28 U.S.C. § 2675(a). See also Henderson v. United States, 785 F.2d 121, 123 (4th Cir. 1986) (citing Kielwien v. United States, 540 F.2d 676, 679 (4th Cir. 1976), *cert. denied,* 429 U.S. 979 (1976)). Indeed, a

plaintiff's failure to do so deprives Federal courts of subject matter jurisdiction to address an FTCA lawsuit. Id.

Here, Plaintiff's failure to initially raise his false imprisonment claim as an administrative claim deprives the United States adequate notice to properly investigate the underlying incident. Ahmed v. United States, 30 F.3d 514, 516–17 (4th Cir.1994) (citations omitted). Such notice must be sufficiently detailed, to permit the United States to accurately evaluate its exposure to legal liability. Keene Corp. v. United States, 700 F.2d 836, 842 (2nd Cir. 1983). An FTCA lawsuit can generally only address the facts and legal theories presented in the underlying administrative claim. See Williams v. United States, 932 F.Supp. 357 (D.D.C. 1996) (claimant cannot "present one claim to the agency and then maintain suit on the basis of a different set of facts"); Bembenista v. United States, 866 F.2d 493 (D.C. Cir. 1989) (where only a sexual assault claim alleged in the SF-95s, failure to include allegations of medical malpractice therein bars an FTCA claim of medical malpractice).

Accordingly, because this claim is not cognizable here, the undersigned recommends that it, be dismissed.

**B. Abuse of Process**

Plaintiff raises a claim of abuse of process in his amended complaint, arguing that the Defendant's employees misused the administrative detention process and the SMU process, for the sole purpose of illegally confining him for three years. ECF No. 39 at 6 – 7.

The only claim raised in Plaintiff's remaining Administrative Tort Claim TRT-MXR-2016-06283 is that the DHO violated procedure by abusing "the process of issuing a rehearing because he changed the whole landscape of the charge itself. I am now being charge[d] for a charge I was

never charged with in the initial incident report [Code 100(A), assisting in killing, rather than Code 100, killing].  This is a direct misuse of a legal process."  ECF No. 55-1 at 3.

Here, however, as the Defendant correctly notes, federal regulation expressly permits a DHO to decide that an inmate committed the precise prohibited act charged in an incident report "*and/or a similar prohibited act(s) as described in the incident report*."  28 C.F.R. § 541.8(a)(1) (emphasis added). Therefore, although the Supreme Court has held that in a prison disciplinary hearing that could potentially result in a loss of GTC, due process requires that the prisoner receive written notice of the charges,[5] at a disciplinary hearing, the DHO may decide that a prisoner committed the prohibited act or acts charged, "*and/or similar prohibited act(s)* as described in the incident report." 28 C.F.R. § 541.8(a)(1) (emphasis added). Here, the written notice Plaintiff received contained a description of the conduct in question. See ECF No. 51-1. The conduct described in the incident report was similar to the prohibited act that the DHO later charged that Plaintiff committed. Thus, the description of the conduct provided the Plaintiff with adequate notice. Therefore, the BOP's actions were consistent with federal regulation and did not constitute abuse of process.

Although the incident report was eventually expunged, Plaintiff was, for a time, subjected to additional restrictions on account of the report. Regarding Plaintiff's allegations regarding his wrongful or illegal extended confinement in the SHU and/or SMU during the investigations conducted, as the Defendant again correctly argues, the BOP has exclusive discretion to decide where to confine a federal prisoner. 18 U.S.C. § 3621(b) (designating that the BOP *shall* decide

---

[5] Wolff v. McDonnell, 418 U.S. 539, 540, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974). The function of notice is to give the charged party a chance to marshal the  facts in his defense and to clarify what the charges are, in fact." Id. at 564.

where to incarcerate federal prisoners); 18 U.S.C. § 4042(a) (charging the BOP to keep federal prisoners safe, including suitable housing); Moody v. Daggett, 429 U.S. 78, 88 n. 9 (1976) (citing Meachum v. Fano, 427 U.S. 215 (1976))(An inmate has no right to be housed in any particular facility). Generally, a federal prisoner has no constitutional right to remain at one particular prison, even where a new location is substantially less agreeable. Id. The "power to designate the place of confinement of a federal prisoner rests exclusively in the Attorney General of the United States." Ange v. Paderick, 521 F.2d 1066, 1068 (4th Cir. 1975). In turn, the Attorney General empowered the BOP to decide where to incarcerate federal prisoners. Id. at 1068 n. 3. This recognizes the fact that "[r]unning a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government." Turner v. Safley, 482 U.S. 78, 84 - 85 (1987); Bistrian v. Levi, 912 F.3d 79, 95 (3rd Cir. 2018) ("Ruling on administrative detention policy matters would unduly encroach on the executive's domain.").

As noted *supra*, at the November 1, 2010 hearing on SMU designation, the HA found that Plaintiff had a history of violent, disruptive behavior negatively impacting inmates and staff; and he was a High Security Level inmate with a Maximum Custody assignment and had a history of numerous serious disciplinary sanctions. See ECF No. 103-3 at 7. Accordingly, and justifiably, the HA concluded that Plaintiff's continued presence in the traditional USP setting jeopardized both the inmate general population and staff, and recommended that he be reassigned to a SMU program for closer monitoring. See "Wilson Decl.," ECF No. 103-3, ¶ 6 at 3. Plaintiff's claims that the real reason for confinement in an SMU was never his disciplinary history notwithstanding, it is the BOP's prerogative to house an inmate wherever it sees fit.

Accordingly, the undersigned recommends that this claim, as well as Plaintiff's related claims regarding his wrongful detention in the SHU or SMU should be denied because they fail to state a claim upon which relief can be granted; thus, it appears that no genuine issue of material fact exists with regard to these claims and they should be denied.

## C. **Intentional Infliction of Emotional Distress**

Plaintiff alleges that the Defendant denied him visits with family and friends; gave him "racially motivated puzzles;" and labeled him a racist, thereby causing him emotional distress. ECF No. 39 at 7.  In his Affidavit of Intentional Infliction of Emotional Distress, he elaborates, stating he was taunted and mistreated by staff and given a word puzzle to do, that upon completion, revealed a hidden message that said "Europe is the smallest country but we run things."[6] ECF No. 39-5 at 1. He provides a list of other inconveniences and aggravations, without offering specifics: denial of legal property and law library privileges; sending his incident reports[7] to the FBI for investigation instead of handling them "in house;" denying him access to his lawyer and thereby to the courts; transferring him to USP Lewisburg's SMU for more "ill treatment," including the creation of "fictitious" incident reports with the intended goal of keeping him in full restraints for a week; and another incident report, issued at USP Lewisburg, upon discovery of another razor blade in his property, also referred to the FBI and then later "kicked back." Id. at 1 – 3. Finally, he alleges a number of conditions of confinement claims regarding denial of access to showers in the SMU; denial of payment for programming; USP Lewisburg's lack of air conditioning and being forced to sleep on "sweat soaked sheets;" broken plumbing; and being confined to a feces-stained cell for at least a week. Id. at 3.

---

[6] Plaintiff, who is black, apparently viewed this hidden message as stating a racist opinion.

[7] Plaintiff admits that during a February 22, 2010 cell move, a razor blade and a bag of wine were found in his possession and he was ultimately sanctioned after the FBI "kicked the incident reports back." ECF No. 39-5 at 1 – 2.

In order to prove the tort of outrage, or intentional infliction of emotional distress ("IIED"), the West Virginia Supreme Court has held:

> In order for a plaintiff to prevail on a claim for intentional or reckless infliction of emotional distress, four elements must be established. It must be shown: (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and, (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

Travis v. Alcon Laboratories, Inc., 504 S.E.2d 419, Syl. Pt. 3 (W.Va. 1998).  Further, the FTCA prohibits an inmate from filing suit against the United States for mental or emotional injury without a prior showing of physical injury.  See 28 U.S.C. § 1346(b)(2).

Here, while Plaintiff has alleged discomfort and inconvenience by the BOP's actions, and attached an excerpt from his mental health medical records,[8] he has alleged no physical injury at all, and thus he cannot establish a claim of IIED.  Because Plaintiff has failed to state an IIED claim, it appears that no genuine issue of material fact exists with regard to this claim and that summary judgment should be granted for Defendant.

**D. Negligence**

Plaintiff contends that the Defendant was negligent in failing to timely review his case and release him from segregation.

Pursuant to the FTCA, the United State is liable in the same manner and to the same extent as a private individual under like circumstances in accordance with the law of the place where the act or omission occurred.  28 U.S.C. §§ 2674 and 1346(b)(1); Medina v. United States, 259 F.3d

---

[8] Plaintiff was seen on July 11, 2012 in Health Services at "OAK," requesting a sleeping pill. ECF No. 39-8 at 1. He was described as "uncooperative/argumentative/agitated/distressed," and his diagnoses were listed as Drug Dependence not otherwise specified and Antisocial Personality Disorder. Id. at 2.

220, 223 (4th Cir. 2001).  In West Virginia, in every action for damages resulting from injuries to the plaintiff alleged to have been inflicted by the negligence of the defendant, the plaintiff must establish three elements: (1) a duty which the defendant owes to him; (2) a negligent breach of that duty; and (3) injuries received thereby, resulting proximately from the breach of that duty. Webb v. Brown & Williamson Tobacco Co., 2 S.E.2d 898, 899 (W.Va. 1939).

Here, critically, Plaintiff fails to establish that any BOP employee breached a duty owed to him and therefore, his negligence claim must fail.

As noted *supra*, Plaintiff's obvious participation in the December 6, 2009 fatal attack on inmate Wilson justifiably led to him being charged in the original Incident Report for his actions, once surveillance video revealed him repeatedly striking Wilson with a weapon. The BOP properly referred the incident report to federal authorities for investigation and potential criminal prosecution. As noted *supra*, pursuant to 28 C.F.R. §§ 541.5(b)(2) and 541.7(c) and BOP P.S. 5270.09, Inmate Discipline Program at 18, 24, and 38, ECF No. 103-4, the BOP suspends its own internal BOP disciplinary investigations and processes when inmate misconduct allegations are serious enough to be referred and reviewed for possible criminal prosecution by a prosecuting authority. On June 15, 2015, federal authorities decided not to pursue criminal charges related to Incident Report 1959677 and released the Incident Report back to the BOP to process through the BOP's own internal discipline process. While initially the DHO determined that Plaintiff *had* committed the prohibited acts of killing and being in an unauthorized area in violation of BOP policy, ultimately, the BOP expunged the riginal disciplinary findings associated with Incident Report 1959677 and remanded the Incident Report for a new disciplinary hearing.

The BOP denied tort claim TRT-MXR-2016-06283, ostensibly because Plaintiff failed to demonstrate  that  he  suffered a physical injury or to explain why he believed that the BOP was

responsible for any such physical injury.[9] On January 25, 2017, the BOP's DHO conducted a new disciplinary hearing on the allegations contained in Incident Report 1959677; found insufficient evidence to conclude that Plaintiff violated BOP policy; and expunged Incident Report 1959677 from Parrish's BOP disciplinary record. Hise Decl. at ¶¶ 6-8.

While Plaintiff may have been greatly inconvenienced by the restrictions he experienced during extended time during which the investigation was conducted, he has not shown that the Defendant negligently breached any duty that it owed to him, let alone that he suffered any injury thereby. Accordingly, Plaintiff has failed to state a claim for negligence against the Defendant, and because it appears that no genuine issue of material fact exists with regard to this claim, summary judgment should be granted for Defendant.

### E. <u>Malicious Prosecution</u>

Plaintiff contends that the Defendant was "set on prosecuting" him for the charge of murder when it had no probable cause to do so. He alleges he lost GCT as a result, but admits it was "ultimately restored after a successful appeal." ECF No. 39 at 8.

In order to prevail on a claim for malicious prosecution under West Virginia law, the Plaintiff must show: "(1) that the prosecution was set on foot and conducted to its termination, resulting in plaintiff's discharge; (2) that it was caused or procured by defendant; (3) that it was without probable cause; and (4) that it was malicious." <u>See</u> <u>Goodwin v. Shepherd Univ. Police</u>, 2018 W.V. Cir. LEXIS 13 (W.Va. 2018) *quoting* Syl. Pt. 3, <u>Norfolk S. Ry. Co. v. Higginbotham</u>, 228 W.Va. 522, 721 S.E.2d 541 (2011) (citations omitted).

---

[9] Plaintiff's administrative tort claim did not explicitly allege an emotional or mental injury, although, as previously noted, he did provide a list of hardships he alleged he had experienced as a result of the altered charge on the Incident Report.

Here, however, again, the undersigned agrees with the Defendant [ECF No. No. 103 at 12 – 13] that while Plaintiff's tort claim TRT-MXR-2016-06283 did allege that "a direct misuse of legal process" occurred when the rehearing was issued for the charge of 100(A) "assisting in a killing," [ECF No. 55-1 at 3]," this not the *same* claim that Plaintiff raises here in his amended complaint, i.e., a claim of malicious prosecution.

As previously noted, a plaintiff must file an FTCA lawsuit in "careful compliance" with certain jurisdictional  prerequisites. Kokotis v. U.S. Postal Serv., 223 F.3d at 278. A prospective plaintiff cannot file a tort lawsuit against the United States without first timely and properly presenting his claim to the appropriate federal agency. 28 U.S.C. § 2401(b); 28 U.S.C. § 2675(a). This Court has no subject matter jurisdiction to address a claim in an FTCA lawsuit that was not first timely  and properly presented to the appropriate federal agency. Id. Such notice must be sufficiently detailed so that the United States can accurately evaluate its exposure to legal liability. Keene Corp. v. United States, 700 F.2d at 842. Plaintiff's failure to first raise his malicious prosecution claim as an administrative claim deprives the United States adequate notice to properly investigate the underlying incident. Ahmed v. United States, 30 F.3d at 516–17.

Accordingly, because an FTCA claimant cannot present one claim to the agency and then maintain suit on the basis of a different set of facts, because Plaintiff failed to give notice of this claim in Administrative Tort TRT-MXR-06283, the claim is not cognizable here, and the undersigned recommends that it, too, be dismissed.[10]

---

[10] Even if Plaintiff's "direct misuse of legal process" were liberally construed, Plaintiff still could not meet any of the elements for malicious prosecution. While an investigation was conducted, Plaintiff was never criminally charged. There was probable cause at the outset, given the surveillance video evidence of Plaintiff's obvious participation in the December 6, 2009 fatal attack on inmate Wilson, making the initiation of the investigation justifiable and not merely malicious. Accordingly, the allegations raised by the Plaintiff do not establish or support any of the four essential elements of the tort of malicious prosecution, and there is no set of facts consistent with those pled allegations that could establish any of these essential elements.

**F. Plaintiff's $5,000,000.00 Claim for Relief**

Plaintiff's amended complaint raises a claim for relief of $5,000,000.00. Even if the undersigned had not already recommended that all of Plaintiff's claims in his amended complaint be denied, the undersigned would recommend that Plaintiff's claim for relief in the amended complaint be denied.

In Administrative Tort Claim TRT-MXR-2016-06710, Plaintiff requested $5,000,000.00 as his claim for relief. ECF No. 55-1 at 8. Administrative Tort Claim TRT-MXR-2016-06710 was denied as untimely raised by this Court's Order. See ECF No. 85 at 15. In Administrative Tort Claim TRT-MXR-2016-06283, the only remaining viable claim at issue here, Plaintiff's claim for relief was $15,000.000. See ECF No. 55-1 at 3.

"The FTCA, 28 U.S.C. §§ 1346(b), 2671–2680, governs tort claims for injuries arising from the negligent conduct of federal employees acting within the scope of their employment." Lopatina v. United States, 528 F. App'x 352, 356 (4th Cir. 2013). "A plaintiff proceeding against the United States under the FTCA must first file an administrative claim with the relevant federal agency within two years after the injury." Id. (citing 28 U.S.C. §§ 2401(b), 2675(a)).

"The administrative claim must contain, among other things, a 'sum certain' for damages." Id. (citing 28 U.S.C. § 2675(b); 28 C.F.R. § 14.2(a); 39 C.F.R. § 912.5(a)). "The presentation of an administrative claim containing a sum-certain demand is a jurisdictional prerequisite to suit." Id. (citing Kokotis v. U.S. Postal Serv., 223 F.3d at 278–79)). "While a claim remains pending with the agency, a claimant may file an amended claim at any time to increase the amount of her sum-certain demand." Id. (citing 28 C.F.R. § 14.2(c); 39 C.F.R. § 912.5(b)- (c)). "If the

administrative claim is denied, or if six months elapse without agency action on the claim, a claimant may bring suit in federal court." Id. (citing 28 U.S.C. § 2675(a)).

"The amount of damages that may be recovered is presumptively limited to the 'amount of the claim presented to the federal agency.'" Id. (quoting 28 U.S.C. § 2675(b)). "A plaintiff may, however, recover a 'sum in excess' of that claim 'where the increased amount is based upon newly discovered evidence not reasonably discoverable at the time of presenting the claim to the federal agency, or upon allegation and proof of intervening facts, relating to the amount of the claim.'" Id. (quoting same). "Post-filing information that is merely 'cumulative and confirmatory' of earlier evidence does not satisfy this exception." Adkins v. United States, 990 F. Supp. 2d 621, 623 (S.D. W. Va. 2014) (citing Kielwien v. United States, 540 F.2d at 680)). A plaintiff "bear[s] the burden of proving that they are entitled to damages in excess of their administrative claim." Spivey v. United States, 912 F.2d 80, 85 (4th Cir. 1990) (citations omitted).

Defendant argues that Plaintiff's claim for the higher amount should be denied because monetary damages in excess of what are requested in an underlying administrative tort claim are not permissible, given that Plaintiff has failed to explain how any newly discovered evidence or intervening facts support such a request. ECF No. 103 at 21.

In response, Plaintiff contends that since he filed his amended complaint, "circumstances changed that were not discoverable at the time of presenting the claim to the federal agency." ECF No. 117-1 at 24. Specifically, he argues that the "alleged incident report 1959677" was not properly expunged from his record; the "negligent management of the record" led to his continued false imprisonment; and he was subjected to two more SMU referrals based on a "history of murdering inmates." Id. Plaintiff contends that because he had no way of knowing that the

Defendant would continue "illegally" using Incident Report 1959677 at the time he filed his administrative tort, an increase in the claim for relief from $15,000.00 to $5,000,000.00 is warranted, because "they relate to the facts, injury and the amount on the earlier claim." Id. at 25.

Here, Plaintiff's attempt to garner the higher claim for relief, not included in the only viable administrative tort claim he has remaining before this Court overlooks the fact that at the time he filed Administrative Tort Claim TRT-MXR-2016-06283 on August 11, 2016, he was already nearly four years past the conclusion of the alleged three-year term of "false imprisonment" that he claims occurred from December 2009 through November 2012 during the investigation of the incident report. Accordingly, Plaintiff was already well aware of the "changed" circumstances he now contends were not discoverable at the time he presented his administrative tort claim to the federal agency. Therefore, not only have Plaintiff's claims all have already been found to lack merit, the reasons Plaintiff now cites in support of his claim for the larger damage amount do not constitute "newly discovered evidence  not  reasonably  discoverable  at  the  time," or "upon allegation and proof of intervening facts, relating to the amount of the claim."

**G. Plaintiff's Claim of Falsified Records**

Plaintiff's response in opposition raises a new claim, that the Defendant falsified records relating to this case.  In support of this, Plaintiff points to an alleged discrepancy between "Exhibit D" of Defendant's dispositive motion and urges the Court to compare that "with the attachments accompanying my amended complaint." ECF No. 117-1 at 5. A review of the Defendant's dispositive motion reveals that there is no "Exhibit D" at all; the Exhibits to the same are numbered, not lettered. Defendant's dispositive motion does, however, have an "Attachment D," which is  a copy of a June 3, 2016 Response to a Regional Administrative Remedy Appeal for Remedy ID No.: 858505-R1, noting that Plaintiff's appeal of the DHO's August 14, 2015 decision

on "Assisting in Killing (Code 100A), and Being in an Unauthorized Area (Code 316)" was being granted to the extent that it was being remanded to the institution for rehearing. See ECF No. 103-1 at 35. Plaintiff concludes that "[t]his document was knowingly created with the intention to distroy [sic] the basis of Parrish['s] administrative tort claim and to get the Plaintiff's lawsuit tossed out." ECF No. 117-1 at 5.  Further, he contends that the Defendant's dispositive motion and the  Williams and Hise Declarations [ECF Nos. 103-1 at 2 – 5 and 103-2 at 2 – 3] should also be "void for containing false and fraudulent statements" because they rely on this allegedly fraudulent "Exhibit D." ECF No. 117-1 at 5 - 6.

A review of the documents Plaintiff attached to his amended complaint reveals that Plaintiff's copy of the June 3, 2016 Response to a Regional Administrative Remedy Appeal for Remedy ID No.: 858505-R1 is identical to the "Attachment D" of the Defendant's dispositive motion.  Cf. ECF No. 39-11 at 2 and ECF No. 103-1 at 35.

Because this new claim appears to lack merit and was not raised until well after the Defendant filed their dispositive motion, it will not be given any further review.

## VI. <u>Recommendation</u>

Accordingly, for the foregoing reasons, the undersigned **RECOMMENDS** that the Defendant's Motion to Dismiss or Alternatively, for Summary Judgment [ECF No. 102], be **GRANTED** as to Administrative Tort Claim TRT-MXR-06283, and that Plaintiff's Amended Complaint [ECF No.  39] be **DENIED and DISMISSED with prejudice** for failure to state a claim under 28 U.S.C. 1915(e)(2)(ii).

The undersigned further **RECOMMENDS** that Plaintiff's pending Motion for Summary Judgment [ECF No. 63], previously stayed by Order entered June 12, 2019 [ECF No. 68], be **DENIED as moot.**

The parties are notified that this Report and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Irene M. Keeley, Senior United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), Rules 6(d) and 72(b), Federal Rules of Civil Procedure, and Rules 1(b) and 8(b) of the Rules Governing Proceedings in the United States District Courts Under Section 2254 of Title 28, United States Code, **any party shall have fourteen days from the date of service of this Report and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection.** Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitations, consistent with LR PL P 12. Extension of this time period may be granted by the presiding District Judge for good cause shown.

**Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.** Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984). A copy of such objections shall be served on Judge Keeley.

 The Clerk is directed to send a copy of this Report and Recommendation to the *pro se* Plaintiff by certified mail, return receipt requested, to his last known address as shown on the docket, and to transmit a copy electronically to all counsel of record.

Upon entry of this Report and Recommendation, the clerk of court is **DIRECTED** to terminate the Magistrate Judge association with this case.

DATED: November 27, 2019

/s/ *Michael John Aloi*
_____
MICHAEL JOHN ALOI
UNITED STATES MAGISTRATE JUDGE